IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW LAMON #R16056,                    )
                                         )
       Plaintiff,                        )
                                         )
vs.                                      )    Case No. 3:21-CV-01024-DWD
                                         )
R-4  CONTROL  OFFICER  (ALINA  )
BLEISCH),                                )
                                         )
       Defendant.                        )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendant Alina Bleisch's ("Defendant") Motion for Summary Judgment. (Doc. 122). Plaintiff Andrew Lamon ("Plaintiff") seeks relief against Defendant for the following claims: (1) Eighth Amendment deliberate indifference for the delayed response to chest his pain, and (2) intentional infliction of emotional distress. For the reasons detailed below, Defendant's motion is DENIED.

## BACKGROUND[1]

The following facts are undisputed. On February 9, 2021, Plaintiff was an inmate at Pinckneyville Correctional Center ("Pinckneyville"). On that day, Defendant Alina Bleisch, who worked as a "pod officer", was assigned to the control unit where Plaintiff was housed. As a pod officer, she was responsible for monitoring the call lights and

---

[1] Consistent with SDIL LR 56.1, the parties each submitted their respective "undisputed material facts" with their briefing papers on the present motion. While the Defendant appropriately responded to the Plaintiff's undisputed material facts, Plaintiff did not reciprocate by "specifically disputing" the Defendant's. Pursuant to SDIL LR 56.1, (g) "all material facts set forth in the State of Material Facts or Statement of Additional Material Facts shall be deemed admitted for the purposes of summary judgment unless specifically disputed".

notifying the other officers if they needed to respond to a certain cell. Specifically, when an inmate would "push" the emergency call button in his cell, a light would illuminate on a board being monitored by the pod officer that would correspond to his cell number.

Around noon on February 9, 2021, the Plaintiff asserts that he began pushing the emergency call button in his cell because he was experiencing chest pain and shortness of breath. No response came in response. It was not until approximately 12:25 P.M. that Plaintiff got the attention of Correctional Officer Crespi who stated that he discovered Plaintiff suffering from chest pain and shortness of breath on his tour of the wing. There is no testimony or other evidence indicating that Correctional Officer Crespi was dispatched by Defendant to Plaintiff's cell.

At 12:26 P.M., a call for medical emergency was made from Plaintiff's cell house and he was moved to the healthcare unit by 12:41 P.M. After initial treatments did not relieve Plaintiff's symptoms, an ambulance was called. Pinckneyville Ambulance Service arrived at approximately 1:00 P.M. and began to treat Plaintiff and placed him in the ambulance. The ambulance departed Pinckneyville with Plaintiff at 1:16 P.M.. Plaintiff received care while in the ambulance enroute and arrived at SIH Memorial Hospital in Carbondale at 1:47 P.M. (Doc. 122-1, P. 41) Plaintiff had suffered a heart attack. *Id.* Defendant does not dispute that on February 9, 2021, "Plaintiff suffered from a serious medical need, i.e. chest pain". (Doc. 122, P.6)

Plaintiff claims that Defendant was deliberately indifferent to Plaintiff's serious medical condition when she failed to respond to Plaintiff's repeated efforts to summon help during a 30 minute period of pushing the emergency call button. (Doc. 1, P. 10).

Defendant claims that she is entitled to summary judgment on the Plaintiffs' claims because she was not aware of any substantial risk of serious harm and, even assuming Defendant was aware, Plaintiff cannot prove any alleged delay caused harm. (Doc. 122, pg. 5-6)

## APPLICABLE LAW AND LEGAL STANDARDS

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, a non-movant must do more than rest upon the allegations made in the complaint to withstand summary judgment. *See e.g., Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("[T]o withstand summary judgment, the non-movant...may not rely on vague, conclusory allegations."); *see also, Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

3

Generally, prison officials and correctional officers, violate the Eighth Amendment's prohibition on cruel and unusual punishment when their conduct shows a deliberate indifference to serious medical needs. *Jones v. Mathews*, 2 F.4th 607, 612 (7th Cir. 2021) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997)); *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must prove (1) an objectively serious medical condition and (2) that the prison officials were deliberately indifferent to the prisoner's health or safety. *Jones*, 2 F.4th at 612 (citing *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017)); *accord Eagan v. Dempsey*, 987 F.3d 667, 694-95 (7th Cir. 2021); *Campbell v. Kallas*, 936 F.3d 536, 544-45 (7th Cir. 2019); *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019).

"A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). In order to prevail on a claim of deliberate indifference, a prisoner must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750; *accord, Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The second consideration is if the prisoner has demonstrated subjective indifference to his situation. The plaintiff need not show the individual "literally ignored" his complaints, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves "intentional or

reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (*citing Gayton v. McCoy,* 593 F.3d 610, 620).

In addition to refusing treatment or providing treatment that is inadequate, a prison official may also be liable for deliberate indifference based on allegations that they needlessly delayed treatment. To demonstrate that a delay caused a cognizable injury, an inmate must show that the delay either exacerbated his injury *or* that it unnecessarily prolonged the pain. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021). In cases where prison officials delayed rather than denied treatment, the plaintiff must offer verifying medical evidence that the delay (rather than the underlying condition) caused some degree of harm. *Id.* at 749 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)).

## ANALYSIS

### A.   *Deliberate Indifference and Defendant's Lack of Knowledge*

The thrust of Defendant's motion is that "plaintiff's deliberate indifference claim fails because Defendant Bleisch was not aware of a substantial risk of serious harm to Plaintiff. (Doc. 122, P.6) Indeed, "[t]o be deliberately indifferent, the official must know of and disregarded an excessive risk to inmate health." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In other words, to be held liable a correction officer must be shown to have been subjectively aware of a risk of harm faced by the inmate.  But the requirement that she be aware of the existence of a risk does not mean that the correction officer must know the specifics of the risk or appreciate the magnitude of the risk beyond it being "substantial".

5

In *Velez v. Johnson*, a pre-trial detainee was being assaulted by his cellmate.[2] Velez

depressed an emergency call button repeatedly without response from Johnson, who was

manning the control center and was responsible for providing responses to emergency

calls. Due to the lack of response from Johnson, Velez was raped by his cellmate. Velez

claimed that Defendant Johnson ignored Velez's assault when he did not respond to the

emergency call.  Johnson claimed he could not have violated Velez's constitutional right

for failure to respond because he was unaware that the assault was occurring. In

determining that Johnson did not enjoy qualified immunity the Court noted:

> Johnson argues that he could not have violated Velez's constitutional rights
> because he had no specific awareness that Zayas had a razor to Velez's
> throat or that he was planning a rape. We disagree. Johnson did not have
> to know the specifics of the danger to be culpable. Indeed, accepting
> Johnson's position would essentially reward guards who put their heads in
> the sand by making them immune from suit—the less a guard knows the
> better. That view is inconsistent with *Farmer*. What matters is that Johnson
> was aware of a serious risk of harm in some form, be it assault or the more
> serious transgression that actually occurred.

*Velez v. Johnson*, 395 F.3d 732, 736 (C.A.7 (Wis.), 2005).

In this matter, it is not disputed that Defendant was not able to see Plaintiff's cell

from inside the control unit. However, as the pod officer, Defendant was responsible for

monitoring call lights from cells. Defendant testified that the emergency call buttons from

cells are "constantly going off" due to inmates pushing them for other reasons, but that

if she notices a particular call button continued to go off, she would send an officer to that

---

[2] "Velez, as we said, was a pretrial detainee at the time of the assault; therefore, his claim arises under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. But as we have noted time and again, there is "little practical difference between the two standards." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.2000). This is so because it would be bizarre indeed to afford greater protection to a convicted prisoner than to a pretrial detainee." *Velez v. Johnson,* 395 F.3d 732, 735 (C.A.7 (Wis.), 2005).

particular cell. Defendant stated it was her procedure that once the call light was illuminated by an inmate depressing his emergency call button she would clear it right away, and if a light had been cleared two prior times she would notify another correctional officer.

Plaintiff testified that he did not have any contact with Defendant on the day in question. Plaintiff testified that he would only ever activate his call button when he had a pass or if there was a medical emergency, otherwise he would have risked receiving a disciplinary ticket. Plaintiff testified that "I don't think [Defendant] intended to kill me. I think she was overwhelmed, and she just didn't see the alarm go off. That's what I think. She's not a bad person. I never heard her do nothing to nobody or nothing like that. That is just my opinion." Plaintiff also stated that "I think that the woman is probably – she was probably doing something that she shouldn't have been doing and she just didn't see it. That is what I think, you know." (Doc. 122-1, P. 11-12)

According to Plaintiff, he pushed the emergency call button repeatedly for 30 minutes before help arrived in the form of another correctional officer while on tour. If functioning, the light corresponding to the Plaintiff's cell should have illuminated the board being monitored by the Defendant. If that is true, then the Defendant must have either ignored the light or continually reset it, thereby ignoring the apparent urgency. Defendant's job required her to act as the gatekeeper of inmate's self-reported emergencies, not to simply disregard them. See *Hardy v. Rabie*, 147 F.4th 1156, 1166 (10th Cir. 2025) ("A jail official exhibits deliberate indifference if he "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical

7

personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference[.]")

The Plaintiff's pushing of the emergency call button is a clear indication that an emergency was occurring. At the same time, Defendant points to no reason for not responding other than "the lights go off all the time" when inmates press the button for non-emergencies. But the record is devoid of evidence of history of the Plaintiff pressing the emergency button for reasons other than emergency.

Viewing the facts in a light favorable to the Plaintiff, material questions of fact emerge that could reasonably support a jury finding Defendant deliberately indifferent.

## B.  Defendants Delay and Plaintiff's Proof of Damages

Next the Defendant claims in a largely undeveloped argument that Plaintiff cannot prove that the delay in responding to Plaintiff's emergency call caused him harm. Defendant then suggests that there is no evidence that the undisputed cardiac event and subsequent surgery could have been avoided but for the delay. So, while the Defendant does not dispute that Plaintiff's condition constituted an objectively serious medical need, she does dispute that her failure to respond to Plaintiff's emergency calls caused him harm.   However, the possible lack of connection between Defendant's delay in responding and the cardiac event may address the total *amount* of damages in this case, it does not necessarily deprive of the Plaintiff of his claim for other damages. Here, the Plaintiff alleges that he suffered chest pain and shortness of breath during the period of delay. He also relates that ambulance personnel almost immediately administered

morphine, a potent opioid analgesic employed for those in severe pain. Damages for pain attributable to delay in treatment are recoverable. Indeed, the Seventh Circuit has recognized that pain associated with delay in treatment of even non-life-threatening may support an Eighth Amendment claim. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 829 (7th Circ. 2009) (pain associated with the poorly placed intravenous needle for several days despite inmate's complaints of pain).  See also *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir.2002) (holding that a complaint alleging that a prison nurse refused to give pain medication prescribed by a physician stated a claim under the Eighth Amendment); *Edwards v. Snyder*, 478 F.3d 827, 830–32 (7th Cir.2007) (holding that a prisoner's claim against a doctor survived dismissal under 28 U.S.C. § 1915A where the prisoner was forced to wait two days for proper treatment of his severely injured finger, leading to "permanent disfigurement, loss of range of motion, and the infliction of unnecessary pain"). In contrast, however, minor pains cannot give rise to such a claim:

> Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment ... but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized.... A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.

*Rodriguez*, 577 F.3d 816, 829 (7th Circ. 2009)

Pain associated with a cardiac event suffered as a result of delay of half an hour and so severe that medical professionals administered morphine, is not "minor" so as be beyond the reach of Eighth Amendment. It is presumed that the Plaintiff will testify at

trial consistent with his deposition testimony regarding the extent, nature and length of the pain he endured between his first emergency call and being discovered by Correctional Officer Crespi. The damage value of Plaintiff's pain will be for the jury to determine. But whether the delay caused any *medical harm* beyond pain is not, in this case, properly addressed in a motion for summary judgment. The record is not currently sufficient.   Defendant may, however, present for consideration via motion *in limine* whether such evidence should be excluded.

## C.   *Plaintiff's Claim for Intentional Infliction of Emotional Distress*

Defendant argues that the Plaintiff's state-law claim for intentional infliction of emotional distress fails because he has not presented sufficient facts from which a jury could infer that the Defendant's conduct was extreme, outrageous or intentional.  (Doc. 122, P. 8)

A claim for intentional infliction of emotional distress has three elements: (1) the conduct involved was "truly extreme and outrageous," (2) the defendant either intended to inflict, or knew there was a high probability he would cause, severe emotional distress, and (3) the defendant actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). To support an intentional infliction of emotional distress claim, the conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001); *Campbell v. A.C. Equip. Servs. Corp.*, 610 N.E.2d 745, 749 (Ill. App. Ct. 1993). *Rose v Snell*, 2026 WL 672775, at *6 (S.D.Ill., 2026)

10

The Seventh Circuit found that the Illinois Supreme Court has noted three factors used to evaluate the alleged outrageousness of a defendant's conduct: "First, the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme." *McGrath v. Fahey*, 126 Ill.2d 78 (1988). "Second, and in conjunction with the first consideration, courts must consider whether the defendant reasonably believed its objective was legitimate." *Id*. at 810. Finally, courts must consider whether the defendant was aware the plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Id*. at 811. The Illinois Supreme Court also provided the following guidance: "We do not mean to imply that these considerations are exclusive, however, nor do we mean to imply that any or all of these factors are necessarily critical to a cause of action for [IIED]." *Id. Franciski v. University of Chicago Hospitals*, 338 F.3d 765, 769 (7th Circ. 2003).

The first factor weighs heavily in favor of the Plaintiff on the issue of outrageousness. Defendant was placed in the position of gatekeeper and overseer and was cloaked with the authority and responsibility to address inmate emergency calls. The decision-making power over whether to respond to an emergency call is significant, and more so given that Plaintiff, as an inmate, had no ability to summon help for himself through any other means. By the record, Defendant was the sole arbiter of whether help would be summoned or whether the board of lights simply cleared with no response. Consideration of the second factor must take into account that Defendant's testimony that she would clear a light twice without responding and, on the third call, notify the officer assigned to that wing. (Doc. 123-1, p. 18). Seemingly, delaying response until an

11

inmate makes three calls is a questionable objective, particularly when the inmate has no apparent history of making unnecessary emergency calls. As to the third factor, there is no evidence to which either party points to suggest that the Defendant was aware that Plaintiff was peculiarly susceptible to emotional distress. However, there is evidence in the record that could support a finding of susceptibility. Indeed, it may be that Defendant's knowledge that Plaintiff, who was repeatedly pushing the emergency call button while confined in his cell and while he was without other means to communicate his medical emergency, faced circumstances that did make him peculiarly susceptible to emotional distress. Considering each of these factors separately and as part of the whole, the Court believes Defendant's conduct could be determined to be extreme and outrageous.

The Defendant also asserts that there is no evidence of intent and, as Plaintiff's testimony shows, Plaintiff does not believe that Defendant set out to injure him. But recklessness or reckless disregard of the risk may also suffice to sustain a claim for infliction of emotional distress. If the Defendant knew that there was a high probability that her conduct would cause severe emotional distress the scienter element of the claim is satisfied. See *Kolegas v. Heftel Broadcasting Corp.*, 180 Ill.Dec. 307, 317, 607 N.E.2d 201 (Ill.1992), citing *McGrath v. Fahey*, 126 Ill.2d at 86, 127 Ill.Dec. 724, 533 N.E.2d 806, citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill.1976). In an attempt to give a workable description of "reckless", the Seventh Circuit has determined that " . . . in civil cases at common law it is enough that the risk, besides being serious

12

and eminently avoidable, is obvious; it need not be known to the defendant." *Slade v. Board of School Directors of City of Milwaukee*, 702 F.3d 1027, 1029 (7th Cir. 2012).

It may well be that Defendant did not have the plan to harm Plaintiff as he admitted, but that does not address the question of whether her conduct was reckless in the sense that she knew that ignoring the repeated emergency calls from the Plaintiff would cause him severe emotional distress. And, behaving obtusely or turning a blind eye to repeated calls does not help her. She need not have known the exact nature of the emergency or that Plaintiff was suffering from a heart attack. It is enough that she knew she was disregarding the 30 minutes of Plaintiff's *emergency calls*. Illumination of the light corresponding to Plaintiff's cell should alert an attendant that there is a risk of an urgent and possibly harmful situation that might be mitigated simply by responding. Under these circumstances, a jury could reasonably find Defendant liable for infliction of emotional distress.

### D. *Qualified Immunity*

Defendant makes a brief argument that she is shielded from liability or civil damages by qualified immunity. (Doc. 122, P. 9) Defendant further asserts she is entitled to summary judgment on the grounds of qualified immunity. Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is an affirmative defense, once a defendant invokes it, the burden shifts to the plaintiff to

13

argue that it should not apply. *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020). On summary judgment, this court must decide (1) whether the facts that plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); see also *id*. at 236 (holding that courts may conduct these inquiries in either order).

Defendant claims that she is entitled to the protections of qualified immunity "because she acted based on her understanding of the law" and, "based on the current status of the law, she would not have known her actions subject her to liability." (Doc. 122, P. 10) She goes on to argue she "acted promptly and reasonably" to the calls for help. *Id*. Plaintiff argues to the contrary and points the Court to the case of *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005).

As noted earlier, Velez was in a cell with another inmate who held a razor to Plaintiff's neck and threatened to cut him. Velez pushed an emergency call button repeatedly. Johnson, the correctional officer in charge of directing responses, did not respond. He argued that he was unaware that the assault was occurring. Plaintiff here argues that the *Velez* Court found "that the failure to adequately respond to an inmate pushing the emergency call light was a violation of an inmate's established constitutional right to be free from an officer's deliberate indifference." (Doc. 123, P. 11) That is not exactly what the Court said. Rather, it stated "we believe it is plainly the right to be free from *deliberate indifference to rape and assault*. There can be no debate that this right was clearly established at the time." *Velez* at 736. (emphasis added).

14

In the end, that distinction does not matter because Plaintiff has met the second requirement of qualified immunity analysis — that the constitutional right be clearly established. Still, before liability will attach, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Velez* at 736 citing *Anderson v. Creighton*, 483 U.S. 635, (1987) There is no doubt that at the time of the occurrence in this matter the law had long-recognized that because "officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge." *Id*. at 735. In any event, there is ample evidence in the record to suggest that Defendant "acted with "deliberate indifference", i.e., that [s]he was subjectively aware, but disregarded, a serious risk to [Plaintiff's] health or safety." Id. at 735, citing *Farmer v. Brennan*, 511 U.S. 825, 833, *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.), cert. denied, 540 U.S. 1003, (2003).

Clearly, the facts that have been developed here may make out a case for a violation of a constitutional right. As noted earlier, Defendant was charged with the duty to respond to emergency calls for help. In fact, her duty to protect against safety and health risks fell peculiarly within her role and corresponding obligations as a pod officer. She might not have known that Plaintiff was having a cardiac event but, following the reasoning in *Velez*, qualified immunity does not attach just because the Defendant here was not aware of the nature of the emergency or did not fully appreciate the seriousness of Plaintiff's condition. His only course of action to give himself any measure of self-protection was to push the emergency call button. The record suggests that Defendant

15

may have ignored the calls for help. Had she responded, she may have learned the true level of Plaintiff's urgency.

Based on the facts available to the Court, Defendant does not enjoy qualified immunity from this action.

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 122) is **DENIED**.

**SO ORDERED.**

Dated: March 31, 2026

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

16